UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BONNIE NORMAN, individually
and on behalf of all others similarly situated                    PLAINTIFF

v.                                    4:20-cv-492-DPM

INDEPENDENT CASE MANAGEMENT, INC.                    DEFENDANT

**DEFENDANT INDEPENDENT CASE MANAGEMENT, INC.'S
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.**
**Introduction**

Bonnie Norman has asserted claims against her former employer

Independent Case Management, Inc. ("ICM") for unpaid overtime under the Fair

Labor Standards Act ("FLSA") and Arkansas Minimum Wage Act ("AMWA").  But

Norman cannot show a genuine issue of material fact on those claims for two

separate reasons, either of which suffices for the Court to grant summary judgment

for ICM.

First, Norman, who worked for ICM as a direct support professional to

provide services to a disabled client, cannot prove that she worked unpaid overtime

when she defied ICM's directives by moving into the client's home and assuming a

quasi-familial caregiver role outside of her normal working hours.  The Eighth

Circuit has recently rejected a similar effort to convert such caregiving services to

unpaid overtime, and the Court should do the same here by granting summary

judgment for ICM.

Second, beyond being unable to show that she worked unpaid overtime, Norman cannot prove the amount of her claimed unpaid overtime because she lost the notebooks that she claims provide the only basis for calculating her unpaid overtime.  Without those notebooks, Norman cannot say when she began working unpaid overtime, identify the weeks in which she worked unpaid overtime, or establish how much unpaid overtime she claims to have worked.  Norman's lack of evidence to prove the amount of unpaid overtime leaves her unable to show a genuine issue of material fact on that point and entitles ICM to summary judgment.

## II.
## Statement of Facts

In November 2016, Norman started working for ICM as a direct support professional, or "DSP."  Ex. 1 to Mot., Excerpts from Norman Dep., at 18, 36.  DSPs who work for ICM provide services to individuals with developmental disabilities. *Id*. at 35; Doc. 21-1, Declaration of Melanie Keener, at 1, ¶ 2.  Those services include activities that help clients develop daily living skills, like scheduling and keeping appointments, managing medications, improving communication skills, and improving diet, health, and fitness.  Doc. 21-1 at 1, ¶ 2.  ICM does not provide "personal care," services that include hands-on assistance with daily living activities like basic hygiene, bathing, dressing, toileting, laundry, or housekeeping.  *Id*. at 3, ¶ 8; Doc. 21-2, Dec. of Craig Olienyk, at 2, ¶ 5.  When ICM clients need personal care services, they are provided by a different agency.  Doc. 21-1 at 3, ¶ 8.

ICM assigned Norman to provide DSP services to a 61-year-old client[1] who has Down Syndrome and is blind.  Ex. 1 at 16, 46–47.  That job required Norman to follow goals and tasks stated in the Client's individualized service program, also known as a plan of care.  Doc. 21-2, Dec. of Craig Olienyk, at 1, ¶ 4.  Those goals and tasks were specifically designed for the Client's needs and approved by the PASSE[2] medical director.  *Id*. at 1, ¶ 4; 2, ¶ 6.  Norman's job required her to work with the Client on those goals during every shift that Norman worked.  Ex. 1 at 47.

Aside from the services that the Client received from ICM through Norman, the Client also received personal care services from a separate agency.  Doc. 21-1 at 2–3, ¶ 6.  That separate agency employed Norman to provide those services to the Client, so Norman filled two separate roles for the Client.  *Id*; Ex. 1 at 33–34.  In the separate personal care services role, Norman provided services that differed from and fell outside the scope of her job duties for ICM.  Doc. 21-1 at 2–3, ¶ 6; Ex. 1 at 33–34, 56–57.  Those personal care services also fell outside the Client's plan of care.  Doc. 21-2 at 4, ¶ 9(c).

In early 2018, Norman moved into the Client's home in Harrison.  Ex. 1 at 26.  ICM did not tell Norman to move in—she made that decision on her own.  *Id*.  In fact, Norman's supervisor even told her not to be at the home when she was off-duty, but Norman told the supervisor that she "would do what God tells [her] to do."

---

[1] Rather than use the client's name, this brief will refer to her simply as "Client."

[2] PASSE is an acronym for Provider-Led Arkansas Shared Savings Entity, a program that manages Medicaid services for individuals with disabilities.

*Id.* at 89.  Norman also told the supervisor that "she felt a moral obligation to stay with the customer after her shift ended and that she felt responsible for the entire family's wellbeing."  Doc. 21-2 at 4, ¶ 9(b).

Though Norman continued working in her job as a DSP, once she moved into the Client's home, Norman effectively became a family member.  *Id.* at 24-25.  Norman moved her belongings into the house, as well as her pets.  *Id.* at 30.  Those efforts extended to helping to find different companies to provide services to the client.  *Id.* at 53.  Norman also ran errands for other family members.  *Id.* at 90.  Norman provided care to the Client's mother and cleaned the home.  Doc. 21-2 at 4, ¶ 9(d).  Norman became so enmeshed with the Client's family that Norman compared the Client to a family member when explaining her motivations:  "I wouldn't leave my sibling, my parent, or my child in a position where they were helpless or hurt or could be hurt, and I didn't leave her either."  Ex. 1 at 89.

Throughout her employment, Norman recorded her time using ICM's systems for reporting time.  Ex. 1 at 20.  Because Norman worked at the Client's home and not at an ICM office or facility, the time recording systems were remote, accessed through phone calls or computers.  Doc. 21-1 at 2, ¶ 4.  She had no paper time card to complete and no office to visit to punch in or punch out.  Doc. 21-2 at 1–2, ¶ 4.

Norman often received overtime pay from ICM when she recorded more than 40 hours worked in a week.  Ex. 1 at 20, 82.  ICM had a policy prohibiting unapproved overtime.  *Id.* at 71–72.  Norman was disciplined for violating this policy in June 2019.  *Id.* at 87–88.  Even so, Norman received substantial overtime

pay during her time at ICM.  In 2019, Norman received over 1,200 hours of overtime pay from ICM.  Doc. 21-3, Dec. of William Diggins III, at 1, ¶ 4.  Through the first two-and-a-half months of 2020—up until the time she left the company—Norman received 195 hours of overtime pay.  *Id.* at 1–2, ¶ 4.

Norman now claims that she is owed unpaid overtime for tasks done for the Client in this role as a surrogate family member.  Norman claims that she worked 16 to 18 hours a day, seven days a week, for a total of 112 hours a week, after she moved in to the Client's home.  Ex. 1 at 20.  But she has no proof to support that claim.  When asked at her deposition—taken in February 2021—if she had calculated the number of unpaid overtime hours that she claimed, she testified that she "did keep a log which has been temporarily misplaced.  I kept log books every day."  *Id.* at 14.  Norman claims that her "log books" were spiral notebooks in which she recorded daily notes and hours spent working with the Client.  *Id.* at 15–16.  By the end of her tenure with ICM in early 2020, she had filled "maybe 10 or 12" of these notebooks.  *Id.* at 17.  Norman last saw those notebooks "probably about three weeks" before her deposition but could not find them at that time.  *Id.* at 19.  Those missing notebooks were the only means that Norman had to calculate her claimed unpaid overtime.  *Id.* at 19, 77, 97–98.  Norman apparently never found those notebooks because they were not produced before the November 5, 2021, discovery deadline that the Court set.  *See* Doc. 81 at 1.

### III.
### Argument

ICM is entitled to summary judgment because the record "shows that there is no genuine dispute as to any material fact" on Norman's claims.  Fed. R. Civ. P. 56(a).  To avoid summary judgment, Norman must present evidence "showing that there is a genuine issue for trial."  *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010) (citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  And if reasonable jurors could find only in favor of ICM, the Court should grant the motion.  *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1112 (8th Cir. 2005) (citing *Anderson*).

### A.      Norman cannot prove that she worked unpaid overtime.

Norman's claims are nearly identical to those on which Judge Wilson granted a summary judgment for the defendant that the Eighth Circuit affirmed because a direct support professional who lived with her client failed to prove that she worked unpaid overtime.  In *Rapp v. Network of Community Options, Inc.*, 3 F.4th 1084 (8th Cir. 2021), Rapp was employed as a direct support professional by Network of Community Options ("NCO").  *Id.* at 1086.  Rapp's only client through NCO was her adult son, who resided in Rapp's home.  *Id.*  Rapp's job for NCO was to work with her son on his goals and objectives set out in his plan of care.  *Id.*  Besides providing 40 hours a week of DSP services, Rapp provided her son with two hours a day of personal care through a separate agency.  *Id.*  Alleging that she worked 98 hours of

unpaid overtime each week[3] because she was on duty "around-the-clock," Rapp sued NCO for violating FLSA. *Id.*

Judge Wilson granted summary judgment for NCO, and the Eighth Circuit affirmed because Rapp failed to prove that she performed overtime work for which she received no pay. Rapp's job for NCO "involved working with [her son] on the goals and objectives set forth in his plan of care." 3 F.4th at 1087. That job did not include "waiting for something to happen." *Id.* "When Rapp's shift ended, her work for NCO was complete and she was free to 'engage in normal private pursuits.'" *Id.* (quoting 29 C.F.R. § 785.23). And Rapp presented "no evidence that NCO was engaged to provide around-the-clock services or that her job included being generally 'on call' or 'on duty' at all times simply because" she lived in the same home as her client. *Id.* at 1087–88. The Eighth Circuit thus concluded that Rapp failed to present evidence that would have allowed a reasonable jury "to find that she was working nearly twenty-four hours pers day, seven days a week, in her role as a direct support professional for NCO." *Id.* at 1088.

The Court should grant summary judgment on Norman's claims[4] for the same reasons that drove the Eighth Circuit's decision in *Rapp*. Like Rapp, Norman

---

[3] As the Eighth Circuit described it, "Rapp calculated her overtime hours by multiplying 24 hours times 7 days (168 hours), then subtracting 40 hours of scheduled NCO work, 14 hours of paid personal care work . . ., and 16 hours of personal time." 3 F.4th at 1086 n.3.

[4] Though Norman has brought her claims under both the FLSA and the AMWA, they are governed by the same standards. *Karlson v. Action Process Serv. & Priv. Investigation, LLC*, 860 F.3d 1089, 1092 n.3 (8th Cir. 2017). ICM thus analyzes the claims together.

was neither engaged nor instructed to provide around-the-clock personal care services for the Client—ICM instructed Norman to work 40-hour weeks in which she focused exclusively on the goals and objectives in the Client's plan of care.  Ex. 1 at 42, 47.  Norman admitted in her deposition testimony that "I was never told to work 24 hours a day."  *Id.* at 42.  ICM specifically told Norman not to live in the Client's home and not to work unapproved overtime.  Doc. 21-2 at 4, ¶ 9(b); Doc. 21-3 at 2, ¶ 5.  Despite ICM's instructions not to live in the Client's home, Norman moved in and became a surrogate family member.  In that role and in her role for other agencies that provided personal care to the Client, Norman provided personal care services to the Client that fell outside the scope of Norman's assignment from ICM to work with the Client on her plan of care.  Doc. 21-1 at 2–3, ¶ 6.

Norman made that decision unilaterally, disregarding ICM's policies and directives.  Ex. 1 at 100, 140.  But, as Judge Wilson put it in granting summary judgment on Rapp's claims, employees like Rapp or Norman cannot "unilaterally convert their job as a 40-hour a week employee to a 24/7 employee" by "blurring the line between when they are working" for their employers and "when they are simply their relative's caregiver."  *Bates v. Network of Cmty. Options, Inc.*, No. 1:19-CV-00036-BRW, 2020 WL 1987359, *2 (E.D. Ark. Apr. 27, 2020).  Norman's time spent in her quasi-familial role as a caregiver thus was not work done for ICM and that time is not unpaid overtime under FLSA or AMWA.

Because Norman cannot show that she worked unpaid overtime, the Court should grant summary judgment for ICM.

**B.      Norman cannot prove the amount of her claimed unpaid overtime.**

As ICM has already shown, Norman's claim fails because she cannot prove that she worked unpaid overtime.  But even if she cleared that hurdle, her claim would still fail because she cannot prove the amount of any unpaid overtime.  If Norman can show work performed for which she was not compensated, she must then present "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (internal citations and quotation marks omitted).  Relying on recollections of daily activities will not suffice when "those recollections are general and vague." *Zornes v. Thompson Transportation Inc.*, No. 4:19-cv-00474-LPR, 2020 WL 6438252, at *8 (E.D. Ark. Nov. 2, 2020) (citing *Holaway*, 771 F.3d at 1058).

Under this standard, "contradictory and bare assertions of . . . overtime hours worked" do not create a triable issue of fact. *Holaway,* 771 F.3d at 1059. Instead, Norman "must provide a meaningful and consistent explanation for her estimate of hours worked as well as 'details which would allow a jury to determine' that [she] worked the claimed overtime." *Zornes*, 2020 WL 6438252, at *8 (quoting *Holaway*). Satisfying that burden requires "specific information, such as 'specific dates worked, specific hours worked, or money owed.'" *Id.* (quoting *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013)).  And "unsupported estimations of the unpaid hours due are not enough."  *Id.*  If a plaintiff cannot sufficiently prove that damages exist in any given work week, then there is no question of fact to be tried. *See Holaway,* 771 F.3d at 1059-60 (affirming summary judgment when the plaintiff failed to establish overtime damages); *Carmody*, 714 F.3d at 406.

ICM is entitled to summary judgment because Norman cannot provide the specific information necessary to show the unpaid overtime she claims to have worked.   Norman testified in her deposition that the only way that she could calculate her claimed unpaid overtime was through a series of "maybe 10 or 12" notebooks she claims to have kept during her employment.  Ex. 1 at 17, 19, 77, 97–98.  But Norman apparently lost all of those notebooks a few weeks before her deposition in February 2021.  *Id.* at 14, 19.  And she must not have found them after her deposition because she never produced them in discovery.  Without the notebooks, Norman cannot even say when she began working unpaid overtime.  *Id.* at 19.  Nor can she say how many hours of overtime she worked in a given week or even what weeks she worked unpaid overtime.  *Id.* at 40, 76–77.  Whatever the fate of those notebooks, their loss dooms Norman's claim because they provided the only basis for her to calculate her claimed unpaid overtime.[5]

Norman's inability to provide anything beyond general, vague recollections about days when she worked unpaid overtime dooms her claim.  The Court should therefore grant summary judgment for ICM.

---

[5] Because Norman did not produce the notebooks in discovery, she cannot use them in responding to ICM's motion for summary judgment unless her failure to produce them is substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  Exclusion under Rule 37(c)(1) is a "self-executing sanction."  Advisory Committee Note, 1993 Am. to Fed. R. Civ. P. 37.  Because the sanction is self-executing, Rule 37(c)(1) "requires the near automatic exclusion of Rule 26 information that is not timely disclosed."  *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 20-21 (1st Cir. 2001).

**IV.**
**Conclusion**

Norman can show neither unpaid overtime nor the amount of unpaid overtime that she claims to have worked.  The Court should therefore grant summary judgment for ICM.

William Stuart Jackson (92189)
Regina A. Young (96161)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
wjackson@wlj.com; ryoung@wlj.com

*Attorneys for Defendant*